The Southern boulevard was laid out in the towns of Morrisania and West Farms, Westchester county, under the act, chapter 290 of the Laws of 1867. It passed through the land of Paul Spofford, and his land was taken for its construction, and a substantial award was made therefor under that act, the 24th section of which was as follows: "Said road when constructed shall be kept and maintained for the public use as an avenue and boulevard; and except for the purposes of crossing the same, no railway or tramway shall be laid or constructed thereon, or upon any part thereof by any persons or corporations. whatsoever, without a special act of the legislature of the state for that purpose first had and obtained; and in case the legislature of the state shall at any future time grant to any person or corporation the right to construct any rail or tramway upon said road or any part thereof, nothing in this act contained shall be construed to affect or cut off the rights of the several owners of land which shall be taken for laying out the road hereby authorized, to claim and recover from such person or corporation the full value of all the land taken from such owner or owners for the road hereby authorized to be constructed, to the same extent as if no such road had ever been laid out on said lands, and without any deduction for any supposed benefit to said lands to arise from the construction of such rail or tramway."
By the act, chapter 723 of the Laws of 1887, that section was amended so as to read as follows: "Said road when constructed shall be kept and maintained for the public use as an avenue and boulevard, and no railway or tramway shall be laid or constructed thereon except by a railway company which has been or may hereafter be duly organized under and by virtue of and in conformity with the provisions of chapter two hundred and fifty-two of the laws of eighteen *Page 257 
hundred and eighty-four, and which has heretofore complied or shall comply with all the provisions of said chapter in respect of the consent of owners of property and the local authorities."
In January, 1890, the Southern Boulevard Railroad Company, the appellant, having complied with the provisions of the law of 1884, instituted this proceeding under the General Railroad Act of 1850, as amended, to acquire "the right to construct, maintain and operate a double-track street surface railroad upon the surface of the soil through, upon and along that portion of the Southern boulevard which formerly belonged to Paul Spofford, deceased, and which is located at or near the junction of the Hunt's Point road with the said boulevard in the twenty-third ward of the city of New York, and also such switches, sidings and turnouts as may be necessary for the convenient working of said railroad and the exercise and enjoyment of the rights, privileges, franchises and immunities now or hereafter to be accorded and secured to it by law."
Three commissioners were appointed and the matter was brought to a hearing before them, and they made their report awarding to the respondents for the fee of the land in the boulevard six cents. They held that the act of 1887 repealed the special rule for compensation of landowners prescribed by the act of 1867, and awarded merely nominal damages because of the existence in and over the land of the boulevard. Their report having been confirmed at the Special Term, the landowners appealed to the General Term of the Supreme Court, and there the order of confirmation was reversed and the report of the commissioners was set aside and a new appraisal was ordered before the same commissioners. (58 Hun, 497.) The General Term held that the act of 1867, as to the compensation to be awarded to the landowners for the construction of a railroad in and upon the boulevard, as provided in section 24, constituted a contract, and that the act of 1887 was ineffectual to alter or impair that contract, and that the compensation to landowners should be *Page 258 
awarded according to the rule laid down in that section. From the order of the General Term the railroad company appealed to this court, and here the appeal was dismissed on the ground that the order was not appealable. (128 N.Y. 93.) The matter was then for the second time brought to a hearing before the commissioners, and, following the rule of damages laid down by the General Term, they awarded the landowners $6,000. An order was then made at the Special Term adjusting the difference between the two reports and directing payment of such difference, the sum of $5,999.94. From that order the railroad company appealed to the General Term, where it was affirmed, and it then appealed to this court, and the appeal was dismissed on the ground that the second report was final and conclusive and not reviewable here. (141 N.Y. 532.) Then the railroad company made a motion at Special Term to set aside and vacate the second report of the commissioners on the ground that the award thereby made "was vitiated by error, misconduct, irregularity and mistake on the part of the commissioners in rendering the same," and the motion was denied. From the order of the Special Term the railroad company appealed to the General Term, and there the order was affirmed, and then it appealed to this court.
The controversy between these parties is whether or not section 24 of the act of 1867 was superseded by the amending act of 1887, so that the special rule of damages provided in that section was abrogated. If the question were properly before us for consideration we should certainly find it interesting, and, as shown in the able briefs submitted to us, not free from difficulty. But we are satisfied that no facts appear in this record which give this court, or any court, jurisdiction to set aside the second report.
The commissioners to be appointed under the General Railroad Act constitute the constitutional tribunal for the award of compensation to landowners. They are not only to determine the facts relating to the matter submitted to them, but all questions of law as well. They are judges of the law *Page 259 
and the facts so far as they relate to the compensation to be awarded. Their report having been confirmed, either party may appeal to the General Term of the Supreme Court, and if the order of confirmation be there affirmed that ends the matter, and no further appeal can be taken. The General Term may set aside and vacate the report, in the exercise of its discretion, for errors of law or of fact, and direct a new appraisal, and it is provided in section 18 of the act that "the second report shall be final and conclusive on all the parties interested." The object of the statute was to secure a speedy determination, before the tribunal specially provided, of the compensation to be awarded to landowners, and to avoid protracted and expensive litigation. This court has always given literal effect to the words "final and conclusive" and has sought to promote the policy upon which the statute is founded. (Matter of the Application of the Mayor,etc., of New York, 49 N.Y. 150; Matter of the N.Y.C. H.R.R.R.Co., 64 id. 60; Matter of P.P. C.I.R.R. Co., 85 id. 489;Matter of N.Y. H.R.R. Co., 98 id. 12; Matter of N.Y., L. W. Ry. Co., 102 id. 704, and 141 id. 532.)
Nothing is alleged upon this motion which did not appear in the record upon the appeal to this court from the second report of the commissioners. It would be a most singular result if that report could not be assailed by appeal and could yet be attacked collaterally by motion upon the same facts brought before the court upon the appeal. If such a practice could be upheld then the policy upon which the statute is based could be entirely subverted.
As has been intimated in several cases, the provision that the second report shall be final and conclusive, nevertheless, has its limitations. If there be any irregularity in the proceeding affecting the jurisdiction of the commissioners, or if there be any fraud or mistake or accident of such a character as would authorize a court of equity in an equitable action to set aside a judgment or report of a referee or an award of arbitrators, then the Supreme Court could upon motion set *Page 260 
aside the report of the commissioners, and if it refused to do so upon undisputed facts, an appeal from its determination could be taken to this court. But there is no dispute about the regularity of the proceedings. All the forms of law were complied with, and there is no allegation of fraud, mistake or accident. The only claim made is that the commissioners and the court below after careful consideration decided the matter in controversy against the railroad company. It alleges errors of law and of fact in the actual determination deliberately and honestly made without accident and without any mistake except as those tribunals may have fallen into error in their views of the law and the facts, and no one will contend that a court of equity would under such circumstances have jurisdiction by action to set aside a judgment.
It may be that a party to such a proceeding may suffer great injustice from errors of law or fact committed by the commissioners or the Supreme Court, without any means of redress. But he is in the same position as every party is against whom a decision has been rendered by a tribunal from which no appeal can be taken.
The award made was for the whole of the land within the limits of the boulevard, and it is now claimed by the appellant that it did not need so much land, and did not seek to acquire so much. But we think from the language of the petition above quoted, that the railroad company did seek to acquire easements in the boulevard over its entire width, and the order appointing the commissioners, which it caused to be entered, described the portion of the boulevard in which it sought to acquire easements for its road, as follows: "That portion of said Southern boulevard which formerly belonged to Paul Spofford, now deceased, situated at or near the junction of the Hunt's Point road with the said boulevard, in the twenty-third ward of the city of New York, and which is about 300 feet in length, along said boulevard, and in width the whole width of said boulevard, to wit, 100 feet."
But the commissioners had before them the description of what the railroad company sought to acquire in the boulevard, *Page 261 
and the nature and extent of the use they expected to make of it, and it was one of the matters they were to determine whether the value of the whole strip of land within the limits of the boulevard was substantially taken, and whether they should base their award upon the whole of such value. If they erred as to this there is no help for it, for reasons above stated.
Our conclusion, therefore, is, that if the commissioners in making their second report erred just as claimed by the appellant, that report is final and conclusive, like the judgment of any court of final resort, although demonstrably erroneous.
The order should be affirmed, with costs.
All concur, except ANDREWS, Ch. J., not sitting.
Order affirmed.